UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


ROBERT J. SULLIVAN,

        Plaintiff                  Civil Action No. 08-11649

v.                               HON.   THOMAS L. LUDINGTON
                                  U.S. District Judge
                                  HON. R.  STEVEN WHALEN
COMMISSIONER OF SOCIAL        U.S. Magistrate Judge
SECURITY,

        Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Robert J. Sullivan brings this action pursuant to 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying his Disability Insurance Benefits ("DIB").  Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment be GRANTED, and Plaintiff's Motion for Summary Judgment DENIED.

## PROCEDURAL HISTORY

Plaintiff filed for DIB on February 9, 2005, alleging disability as of January 30, 2005[1]

_____

[1]Plaintiff also filed an application for Supplemental Security Income ("SSI") on August 15, 2005 (Tr. 159-160).

(Tr. 39).   After the initial denial of benefits on April 14, 2005, Plaintiff requested an administrative hearing, held on February 27, 2007 in Flint, Michigan (Tr. 33, 161).  Plaintiff, represented by Kerry Spencer-Johnson, testified, as did Vocational Expert ("VE") Michael Rosko (164-176, 176-179).   On May 25, 2007, Administrative Law Judge ("ALJ") Roshak found that although Plaintiff was unable to return to his past relevant work, he could perform a limited range of sedentary jobs (Tr 18-19).   On February 19, 2008, the Appeals Council denied review (Tr. 4-6).  Plaintiff filed for judicial review of the final decision on April 18, 2008.

## BACKGROUND FACTS

Plaintiff, born October 5, 1958, was age 48 when the ALJ issued his decision (Tr. 39). He completed seventh grade and worked previously as a security guard, construction worker, and housekeeper (Tr. 51, 57).   Plaintiff alleges disability as a result of clubbed feet, arthritis, circulatory problems, and limited vision (Tr. 47).

### A.    Plaintiff's Testimony

Plaintiff, unmarried, testified that he stood 5'6-1/2" and weighed 175 pounds (Tr. 164). He stated that he currently lived in a single-story house with a friend (Tr. 165).  Plaintiff reported that he performed minimal household or yard chores, spending a good portion of each day listening to the television (Tr. 165).   Plaintiff testified that he attended church regularly, but seldom visited friends and family (Tr. 165-166).  He denied participating in sports, but reported that he worked with train sets as a hobby (Tr. 166).   Plaintiff reported that he could shop for groceries with assistance (Tr. 167).

Plaintiff testified that upon arising, he typically experienced balance problems and range of motion limitations in his ankles (Tr. 167). He indicated that he could climb stairs only by leaning on the bannister (Tr. 169). He reported smoking one pack of cigarettes each day but denied alcohol use (Tr. 168). He denied taking illegal drugs in the past 20 years (Tr. 168). Plaintiff disputed medical records showing that he illegally obtained morphine from his sister and denied recent marijuana use (Tr. 168-169).

Plaintiff testified that he was able to care for his personal needs but was unable sit for more than 20 minutes or stand for 10 (Tr. 170). He stated that he was unable to walk more than half a block or lift more than 10 pounds (Tr. 170). Plaintiff alleged difficulty reaching, handling, grasping, pulling, climbing, kneeling, crouching, and squatting (Tr. 170, 172). He reported that he had never held a driver's license, alleging concentrational limitations including understanding and remembering detailed instructions (Tr. 170-171, 173). Plaintiff also reported vision problems as a result of both an eye injury and glaucoma (Tr. 171).

Plaintiff denied problems interacting with his former coworkers (Tr. 172-173). He reported that he stopped working after his corporate employer was purchased by a larger company, adding that he was refused a position by the new management because of his educational level and physical limitations (Tr. 173-174). He alleged that he had been able to keep his former position only because coworkers helped him complete his job assignments (Tr. 172-173). Plaintiff opined that exertional limitations combined with his inability to read or write precluded all work (Tr. 174). Upon questioning by his attorney, Plaintiff testified that his vision was distorted with a "white haze" (Tr. 175). He reported that between the

-3-

ages of 10 days and 15 years he underwent numerous ankle surgeries, but still experienced constant pain and stiffness (Tr. 176).

### B.    Medical Evidence

### 1. Treating Sources

A December, 2004 entry shows that Plaintiff was prescribed Celebrex 200 (Tr. 107). In December, 2005, Vanika Lath, M.D., noted Plaintiff's history of foot surgery, observing that he "was able to walk at a fast pace, unassisted without any gait abnormality" (Tr. 152). The physician concluded that "the severity of symptoms as reported by [Plaintiff] and as observed in clinic today do not correlate" (Tr. 152). Although Plaintiff reported taking only Vicodin as prescribed by his physician, Dr. Lath remarked that Plaintiff's "dependence on narcotics needs to be addressed" (Tr. 152). June, 2006 treating notes indicate that Plaintiff experienced ongoing substance abuse (Tr. 137).

In April, 2006, ophthalmologist Matthew L. Burman, M.D., found the presence of congenital ambylopia right eye, traumatic cataract and corneal scarring of the left eye, hyperopic astigmatism, and presbyopia (Tr. 108). He noted that Plaintiff's "[b]est corrected visual acuity distance was 20/50 on the right and 20/20 on the left" (Tr. 108). Dr. Burman, acknowledging that Plaintiff needed a "lifetime [of] ophthalmological care," found nonetheless that Plaintiff was "able to perform the basic work activities and activities of daily living of a person his age" (Tr. 108). He opined that Plaintiff required polycarbonate eyeglasses for the protection of his eyes (Tr. 108).

October, 2006 imaging studies of the lumbar spine showed mild spondylosis (Tr. 133).

-4-

In November 19, 2006, Plaintiff sought emergency treatment at Sinai-Grace Hospital in Detroit after experiencing discomfort as a result of kidney stones (Tr. 114). He was given opiates and admitted for further evaluation (Tr. 116). Plaintiff denied using alcohol but admitted to marijuana use (Tr. 114). Two days later, having left Sinai-Grace against medical advice, Plaintiff sought emergency treatment at Harper-Hutzel Hospital (Tr. 118). Plaintiff admitted that he took morphine given to him by his sister as well as Vicodin prescribed by a physician (Tr. 118). Plaintiff was discharged in stable condition but returned on November 24, again complaining of abdominal pain (Tr. 120-121). Plaintiff was discharged, but returned on November 26, 2006 with pain as well as nausea and vomiting (Tr. 122). Plaintiff, again stating that he received morphine from his sister, received a prescription for Toradol and was discharged in stable condition (Tr. 122-123). A November 27, 2006 CT scan confirmed the presence of kidney stones (Tr. 127).

December, 2006 treating notes showed an ongoing history of substance abuse (Tr. 125). The same month, Vikas Veeranna, M.D., completed an assessment of Plaintiff's work abilities, noting that Plaintiff experienced mild lumbar spondylosis, club feet with degenerative changes, and pain and stiffness (Tr. 112). He found that Plaintiff could lift a maximum of 20 pounds, walk for a total of one to two hours over the course of an eight-hour workday and sit for up to six hours (Tr. 110). Dr. Veeranna limited Plaintiff to occasional climbing, balancing, stooping, crouching, kneeling, and crawling, finding further that Plaintiff experienced limitations in pushing and pulling, and working at heights or with machinery (Tr. 111). The physician concluded that "due to pain and discomfort" as a result

-5-

of "degenerative foot changes and lumbar spondylosis," Plaintiff was unable to perform full-time work (Tr. 113).

### 2. Consultive and Non-Examining Records

In March, 2005 Cynthia Shelby-Lane, M.D., examined Plaintiff on behalf of the SSA (Tr. 96-103). Plaintiff reported chronic pain as a result of multiple leg and ankle surgeries (Tr. 95). Dr. Shelby-Lane, acknowledging a history of surgery for club feet, noted that Plaintiff reported leg numbness, balance problems, and shoulder pain as a result of dislocating both shoulders while performing construction work (Tr. 95). Plaintiff reported taking Bextra, Celebrex, and marijuana (self-prescribed) on a daily basis (Tr. 95). Plaintiff also reported right forearm surgery for a fracture and limited vision as a result of both a congenital condition and injury (Tr. 96). Dr. Shelby-Lane, noting that Plaintiff's corrected vision was 20/25 on the left and 20/200 on the right, remarked that all of the conditions were being monitored by Plaintiff's primary care physician (Tr. 98). Dr. Shelby-Lane found that Plaintiff was able to bend, stoop, dress himself, perform other fine manipulations, and climb stairs (Tr. 101). The physician also noted the absence of muscle atrophy (Tr. 97). She concluded her study by opining that Plaintiff did not require a walking aid (Tr. 102).

The same month a Residual Functional Capacity Assessment performed on behalf of the SSA found that Plaintiff could lift 20 pounds occasionally and ten pounds frequently, stand or walk for two hours in an eight-hour workday, and sit for six hours (Tr. 88). The Assessment limited Plaintiff to occasional climbing, balancing, stooping, kneeling, crouching, and crawling, but found the absence of manipulative, visual, communicative, or

environmental impairments (Tr. 89-91).  Acknowledging surgeries for club feet, the Assessment noted that Plaintiff was unable to walk heel to toe in tandem but that his gait was "stable" (Tr. 88).

### C.    Vocational Expert Testimony

VE Michael Rosko classified Plaintiff's former work as a security guard as semi-skilled at the light to very heavy exertional level and construction work as unskilled and very heavy[2] (Tr. 177).  The VE found that if Plaintiff's testimony regarding his exertional limitations were fully credited (also taking into account his age and education) he would be unable to return to the former jobs of security guard or construction worker, but could perform the sedentary, unskilled work of an assembler, packager, sorter, visual inspector, lobby attendant, gate attendant, and security monitor, finding the existence of 7,500 such jobs in the local economy  (Tr. 177-178).  Next, the VE testified that if Plaintiff's non-exertional (physical, mental, postural, manipulative, and visual) allegations of limitations were considered, "the only factor . . . to have the potential of being preclusive [of employment] would be his visual difficulties" (Tr. 178).

---

[2] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools;  *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy*  work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. *Very Heavy work* requires "lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. § 404.1567(e).

The VE stated that his testimony regarding "unskilled jobs in the security field" conflicted with the Dictionary of Occupational Titles's conclusion that the security jobs were "at the very low end of semi-skilled[] and generally at the light exertional level" (Tr. 179). He noted that in his capacity as a vocational counselor, he had "[p]laced literally hundreds" of individuals in unskilled, sedentary security field positions (Tr. 179). In response to questioning by Plaintiff's attorney, he testified that the inability to work more than six hours a day precluded competitive work (Tr. 179).

**D.     The ALJ's Decision**

ALJ Roshak found that while Plaintiff experienced the conditions of club feet with postoperative degenerative changes, lumbar spondylosis, hydronephrosis, hypertriglyceridemia, impaired vision, and drug abuse, none of the conditions met or medically equaled one of the impairments found in Part 404 Appendix 1 Subpart P, Regulations No. 4 (Tr. 18). The ALJ found that while Plaintiff was unable to perform his past work, he retained the residual functional capacity ("RFC")

> "to perform work-related functions except for work involving prolonged standing/walking, lifting/carrying more than 10 pounds, or more than unskilled tasks . . . requir[ing] a sit/stand option for the sake of comfort"

(Tr. 18).

Adopting the VE's job findings, the ALJ found that Plaintiff could perform the work of an assembler, inspector, packager, sorter, gate tender, lobby attendant, and security monitor (Tr. 19). He found further that Plaintiff "would not be disabled if he stopped using drugs," observing that Public Law 104-121 prohibited him from awarding benefits "when

-8-

drug addiction . . . is material to the determination of disability" (Tr. 15).

The ALJ also found that Plaintiff's "subjective symptomotology and allegations of debility [were] somewhat exaggerated, self-serving, and without any objective probative medical or non-medical support" (Tr. 18). In further support of the credibility determination, the ALJ noted that an April, 2006 ophthalmological exam showed corrected visual acuity of 20/20 on the left eye and 20/50 on the right, citing Dr. Burman's April, 2006 finding that Plaintiff could "perform the basic work activities and activities of daily living of a person his age" (Tr. 16). He rejected Plaintiff's allegation of illiteracy on the basis that "he was employed as a security guard for more than 14 years, a job in which he was required to write and complete reports" (Tr. 16). The ALJ also noted that Dr. Veeranna's December, 2006 assessment of Plaintiff's residual abilities "[did] not preclude sedentary work with a sit/stand option (Tr. 16).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way,

without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

-10-

## ANALYSIS

Plaintiff makes multiple arguments for reversal, contending 1). The ALJ's Step Two determination was procedurally and substantively flawed. *Plaintiff's Brief, Docket #8* at 9-10. 2). The VE's job findings, based on an incomplete list of his work-related impairments, did not reflect his full degree of limitation. *Plaintiff's Brief* at 11 (*citing Varley v. Secretary of Health and Human Services,* 820 F.2d 777 (6th Cir. 1987)). 3). The credibility determination was tainted by the ALJ's failure to discuss Plaintiff's allegations of disabling pain. *Id.* at 11. 4). The ALJ "did not address" Dr. Veeranna's December, 2006 disability opinion. *Id.* at 12. 5). The ALJ erroneously concluded that drug use contributed materially to Plaintiff's inability to work. *Plaintiff's Brief* at 12-13.[3]

Arguments 1,2, 4, 5 hinge at least in part on the validity of the ALJ's credibility

---

[3]Plaintiff's *Reply* sets forth yet another argument for reversal, contending that the ALJ failed to the develop the record by ordering additional testing. *Reply* at 3. He cites Dr. Lath's May, 2006 reference to a radiograph unavailable for review and a contemplated, but never executed PM&R evaluation for the proposition that the ALJ based his decision on an incomplete record (Tr. 141). "[A]rguments raised for the first time in a reply brief are generally not considered." *Ryan v. Hazel Park,* 2007 WL 1174906, *7 (E.D.Mich.,2007) (Battani, J.); *Wright v. Holbrook,* 794 F.2d 1152, 1156 (6th Cir.1986). Moreover, Plaintiff, represented by counsel at the administrative hearing, offers no explanation for his failure to raise the inadequate medical records argument  before the ALJ. "Claimant has the ultimate burden of proving the existence of a disability." *Key v. Callahan,* 109 F.3d 270, 274 (6th Cir. 1997). In any case, the argument fails on its substance. The record shows that Plaintiff sought and received treatment on a regular basis, including imaging studies. Further,  Dr. Veeranna completed an assessment of Plaintiff's work-related abilities in December, 2006 (Tr. 110-113).

determination.  The Court will therefore address Plaintiff's third argument first.

### A.  The Credibility Determination

### 1.  General Principles

An ALJ's credibility determination is guided by SSR 96-7p, which further describes a two-step process for evaluating symptoms.  *See Duncan v. Secretary of Health and Human Services,* 801 F.2d 847, 853 (6th Cir.  1986). "First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment. . .that can be shown by medically acceptable clinical and laboratory diagnostic techniques."  *Id.*  Second, SSR 96-7p directs as follows:

> "[W]henever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record."

*Id.*   C.F.R. 404.1529(c)(3), 416.929(c)(3) lists the factors to be considered in evaluating whether a claimant's symptoms are disabling:

> (i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms."

Reviewing courts generally cede enormous latitude to the administrative credibility

determinations. *Casey v. Secretary of Health and Human Services,* 987 F.2d 1230, 1234 (6th

Cir. 1993); *see also Anderson v. Bowen* 868 F.2d 921, 927 (7th Cir. 1989)(*citing Imani v.*

*Heckler,* 797 F.2d 508, 512 (7th Cir.1986))(The "credibility determination must stand unless

'patently wrong in view of the cold record'"). However, an ALJ's decision must contain

specific reasons for the findings of credibility, supported by substantial evidence in the

record. *Howard v. Commissioner of Social Security,* 276 F.3d 235, 242 (6th Cir. 2002); *see*

*also Heston v. Commissioner of Social Security,* 245 F.3d 528, 536 (6th Cir. 2001).

### 2. The Present Case

Contrary to Plaintiff's argument, in rejecting allegations of disabling pain, the ALJ

complied with both the procedural and substantive requirements of SSR 96-7p.   First, the

ALJ acknowledged Plaintiff's history of foot surgery, spondylosis, and vision and circulatory

problems, nonetheless deeming allegations of limitation "somewhat exaggerated, self-

serving, and without any objective probative medical or non-medical evidence" (Tr. 18).  The

ALJ discounted Plaintiff's testimony that he was unable see well enough to watch television,

citing Dr. Burman's April, 2006 finding that Plaintiff experienced corrected vision of 20/20

on the left and 20/50 on the right (Tr. 13).  The ALJ also noted that the claim of debilitating

pain stood at odds with Dr. Lath's December, 2005 observation that Plaintiff "was able to

walk unaided at a fast[] pace[] and without any gait abnormality and all other joints were

normal" (Tr. 14).

Also, the ALJ cited the results of Dr. Shelby-Lane's March, 2005 findings showing

a "functional range of motion of the spine and all peripheral joints without deformity,

-13-

enlargement, swelling, muscle spasm, or muscle atrophy," noting further that the consultive physician found that Plaintiff "had flat feet and normal stance, ambulated unaided with a slightly wide-based gait, was neurologically intact without any focal sensory, motor, or reflex deficits, and grip and dexterity were intact bilaterally" (Tr. 12-13). The ALJ observed that a September, 2005 EKG and November, 2005 lower extremity Doppler studies were unremarkable (Tr. 13).

In additin, the ALJ permissibly cited Plaintiff's daily activities in support of his rejection of Plaintiff' allegations of disabling pain. C.F.R. 404.1529(c)(3), 416.929(c)(3). The ALJ observed that Plaintiff continued to fix meals, perform household chores and repairs, attend church, play video games, and work with model trains (Tr. 16 *citing* 67, 84). The ALJ discounted Plaintiff's claim that he experienced sleeplessness, noting that Plaintiff currently took Vicodin, which is "known to induce sleepiness" (Tr. 16). Finally, the ALJ remarked that Plaintiff's claim that he was unable to read or write was undermined by the fact that "he was employed as a security guard for more than 14 years, a job in which he was required to write and complete reports" (Tr. 16). The ALJ's credibility determination, amply supported by record evidence, does not provide grounds for remand.

### B. Step II Determination

Plaintiff argues that the ALJ's Step Two determination contained multiple errors, noting first that while the ALJ acknowledged the conditions of club feet with postoperative degenerative changes, lumbar spondylosis, hydronephrosis, hypertriglyceridemia, impaired

vision, and drug abuse,  he erred by failing to state that these impairments were "severe" *Plaintiff's Brief at 10* (*Citing* Tr. 18).   Plaintiff also contends that the Step Two finding did not include work-related limitations concerning his "hands, elbows, shoulders, ankles as well as the syncope episode" *Id.*

The ALJ's omission of the word "severe" in determining work-related limitations does not constitute reversible error.   At Step Two of the administrative analysis, the ALJ must determine which, if any, of the claimant's conditions are severe. 20 C.F.R. §416.920(a). In the Step Two context, a "severe impairment" refers to a condition creating work-related limitations. 20 C.F.R. § 416.921(a).  While the ALJ did not actually state that Plaintiff experienced  "severe," conditions, at the end of his two-page analysis entitled "Severe Impairment," he stated that Plaintiff "has" the conditions of "club feet with postoperative degenerative changes, lumbar spondylosis, hydronephrosis, hypertriglyceridemia, impaired vision, and drug abuse," clearly implying that he found these impairments "severe."   More obviously, construing the findings to state the absence of any severe impairments stands at odds with the fact that the ALJ proceeded to analyze the claim through Step Five. Had the ALJ found that Plaintiff did not experience at least one severe impairment, the administrative analysis would have ceased with a finding of non-disability at Step Two.   20 C.F.R. § 404.1520(a)(4).

Moreover, although Plaintiff also faults the ALJ for neglecting to include limitations of the hands, elbows, shoulders, ankles, and the "syncope episode," in  the Step Two findings, these omissions do not require reversal.  As discussed *supra,* the ALJ's credibility

determination, rejecting  "subjective allegations of foot, back, neck, and shoulder pain," is

well-supported by record evidence (Tr. 15).  While medical notes suggest upper extremity

limitations (Tr. 143), evidence found elsewhere in the record shows that Plaintiff's hand,

arm, and shoulder functions were unimpaired despite experiencing a past shoulder

dislocation and a forearm fracture (Tr. 98-101, 151-152).  Further, although Plaintiff

criticizes the ALJ for neglecting to find "ankle" problems at Step Two, the ALJ accounted

for this limitation by noting "postoperative degenerative changes" as a result of clubbed feet.

Finally, record evidence supports the ALJ's omission of the "syncope episode" from his Step

Two findings. Despite November, 2006 emergency room notes showing that Plaintiff

reported a loss of consciousness for "two or three minutes" on one occasion, he has presented

no evidence showing that the "episode" created workplace limitations (Tr. 114).

### C.  The VE's Job Findings

For overlapping reasons, I disagree that the VE's job findings are in invalidated by

the fact that "the hypothetical question did not include all of [Plaintiff's] limitations . . .

established by the medical record."  *Plaintiff's Brief* at 10-11.  Plaintiff cites *Varley v.*

*Secretary of Health & Human Services,* 820 F.2d 777 (6th Cir. 1987) for the proposition that

"[s]ubstantial evidence may be produced through reliance on the testimony of a vocational

expert in response to a hypothetical question, but only if the question accurately portrays

plaintiff's individual physical and mental impairments." *Varley* at 779 (internal citations

omitted).

The hypothetical limitations imposed by the ALJ reflect a more than fair account of

Plaintiff's impairments.  To be sure, the portion of the hearing devoted to the VE's testimony deviated from the usual procedure whereby the ALJ  presents a list of impairments (hypothetical question) which forms the basis of the VE's job findings.  In contrast here, the ALJ asked the VE if any jobs were available to the Plaintiff if his claims of exertional limitations were *fully* credited (Tr. 178).  The VE found that if all of the alleged exertional allegations were taken into account, Plaintiff could nonetheless perform a range of sedentary work (Tr. 178).   While Plaintiff contends that the job findings are tainted by the fact that his allegations of non-exertional limitations were not considered, the administrative opinion contains multiple reasons for rejecting his claims of non-exertional limitations.  "[T]he ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals." *Stanley v. Secretary of Health and Human Services,* 39 F.3d 115,118-119 (6th Cir.1994); *Hardaway v. Secretary of Health & Human Servs.,* 823 F.2d 922, 927-28 (6th Cir.1987).  Moreover, after making his job findings, the VE found that even if Plaintiff's allegations of *non*-exertional limitations were fully credited, "the only factor that [Plaintiff] described in his testimony that appear to have the potential of being preclusive would be his visual difficulties" (Tr. 178). As discussed *supra,* the ALJ provided ample reasons for discounting Plaintiff's allegations of disabling visual impairments (Tr. 16).

### D.  The Treating Physician Analysis

Plaintiff contends next that the ALJ "did not address" Dr. Veeranna's December, 2006 opinion that he was unable to perform full-time work. *Plaintiff's Brief* at 12 (*citing* Tr. 113).

-17-

Contrary to this argument, the ALJ discussed the treating physician's December, 2006 assessment at Step Two of his analysis (Tr. 14) and again when crafting Plaintiff's residual functional capacity (Tr. 16).

Further, I disagree with Plaintiff's implied argument that the ALJ erred by failing to state his reasons for the rejecting the physician's disability opinion. *See Wilson v. Commissioner of Social Sec.* 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R §404.1527(d)(2)) (An ALJ's failure to explain his reasons for rejecting a treating physician's opinion constitutes reversible error). In fact here, the ALJ rejected the physician's opinion by noting that Plaintiff's allegations of intractable pain stood unsupported by "objective clinical, laboratory, or x-ray findings" as well as "non-medical evidence" (Tr. 15). Consistent with *Wilson,* 378 F.3d at 544, the ALJ addressed the "supportability" of the opinion and its "consistency of the opinion with the record as a whole," by noting that Dr. Veeranna's assessment of Plaintiff's exertional abilities did not "preclude sedentary work with a sit/stand option" (Tr. 16). In fact, the ALJ rejected only Dr. Verranna's statement that Plaintiff was disabled - a conclusion supported by an abundance of record evidence.

### E.  Substance Abuse

Last, Plaintiff faults the ALJ for concluding that "drug abuse" was "a contributing factor material" to the non-disability findings. *Plaintiff's Brief* at 12-13. Plaintiff (apparently conceding the finding that he had used marijuana daily since the age of 13) argues that his former ability to hold a job while using marijuana stands at odds with the ALJ's conclusion

that his  drug abuse was "material" to his inability to work.  *Id.*

"[I]n 1996, Congress enacted Public Law 104-121 that ended all disability payments for which 'drug addiction and/or alcoholism was a contributing factor material to ... [the] disability.'" *Rice v. Commissioner of Social Security,* 169 Fed.Appx. 452, 453, 2006 WL 463859, *1 (6th Cir. 2006).  "The key factor to the determination of disability is whether the individual would still be disabled if alcohol and drug use stopped."  *Doerr v. Astrue,* 2009 WL 200989, *8 (E.D.Tenn. 2009).

The Court need not consider Plaintiff's argument that marijuana use did not prevent him from working in the face of substantial evidence showing ongoing *prescription* drug abuse.  In December, 2005, Dr. Lath recorded that Plaintiff's "dependence of narcotics needs to be addressed" (Tr. 152).  May, 2006 treating notes also suggest that Plaintiff exhibited drug-seeking behavior (Tr. 141).  Plaintiff acknowledged repeatedly in November, 2006 to emergency room personnel that he took morphine given to him by his sister (Tr. 118, 122-123).  Plaintiff's non-prescribed use of narcotics (presumably at higher doses than those prescribed by treating sources) constitutes substantial evidence sufficient to find that drug abuse was "material" to his disability claim.

In closing, this Court's conclusion recommending the grant of summary judgment to the Commissioner is not intended to trivialize Plaintiff's legitimate impairments precluding his former work. However, the overriding question in this appeal is whether the Commissioner's decision that Plaintiff was not disabled from *all* work was supported by

-19-

substantial evidence.  Based on a review of this record as a whole, the ALJ's decision is well within the "zone of choice" accorded to the fact-finder at the administrative level.  Pursuant to *Mullen v. Bowen*, *supra*, the ALJ's decision should not be disturbed by this Court.

## CONCLUSION

For the reasons stated above, I recommend that Defendant's Motion for Summary Judgment be  GRANTED, and Plaintiff's Motion for Summary Judgment DENIED.

Any objections to this  Report and Recommendation must be filed  within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir.  1991); *United States v. Walters,* 638 F.2d 947 (6th Cir.  1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir.  1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir.  1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court.  The

response shall address specifically, and in the same order raised, each issue contained

within the objections.

s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated:  May 11, 2009

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on May 11, 2009.

s/Susan Jefferson
Case Manager